UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MIROSLAVA RODRIGUEZ-GRAVA and ISAIAS VASQUEZ CISNEROS DE JESUS, | § § § § | |
| Plaintiffs, | § § | NO:   SA:07-CA-0717-OG |
| vs. | § § | |
| GEO GROUP, INC.; THE UNITED STATES OF AMERICA; FRIO COUNTY, TEXAS; and SOUTH TEXAS DETENTION COMPLEX LOCAL DEVELOPMENT CORPORATION, | § § § § § § | |
| Defendants. | § | |

<u>MEMORANDUM AND RECOMMENDATION AND ORDER</u>

Before the Court is the defendant, GEO Group, Inc.'s ("GEO") second motion to dismiss (docket nos. 39 and 45), to which plaintiffs have responded (docket no. 42). Additionally, the Court considers defendant, South Texas Detention Complex Local Development Corporation's (STDCLDC) motion for summary judgment. (Docket nos. 56 and 65). The plaintiffs have responded to this motion as well (docket no. 63), and have filed an unopposed motion for extension of time to file their response (docket no. 61), which the Court **GRANTS**. Upon consideration of the dispositive motions, responses, and applicable law, the Court believes that GEO's motion to dismiss should be **GRANTED in part** and **DENIED in part** and STDCLDC's motion for summary judgment should be **GRANTED**.

## BACKGROUND

Plaintiff, Miroslava Rodriguez-Grava (Rodriguez) and Isaias Vasquez Cisneros de Jesus (Cisneros de Jesus) sued GEO, the United States of America, Frio County, Texas, and STDCLDC, for injuries allegedly sustained while plaintiffs were separately detained at the South Texas Detention Complex (STDC) from approximately September 2005 until March 2008.  Rodriguez, who suffers from bi-polar disorder, post-traumatic stress, and depression, asserts that while detained, the defendants denied her special treatment and reasonable accommodations due to her mental disability, denied her access to medical services and treatment, failed to provide her with her prescribed medication, and failed to provide her adequate and regular psychiatric treatment.  Similarly, Cisneros de Jesus, who suffers from schizophrenia, asserts that while detained, the defendants failed to provide him special treatment and reasonable accommodations due to his mental disability, denied him access to medical services and treatment, failed to provide him with his prescribed medication, and failed to provide him adequate and regular psychiatric treatment.

Plaintiffs base their claims against the defendants, including GEO and STDCLDC, on the following: in January of 2004, the United States accepted a proposal by, and entered into a contract with, Correctional Services Corporation (CSC), the predecessor to GEO, to provide housing to detainees at a facility

2

to be located in Frio County, Texas; CSC then contracted with Frio County, Texas to construct this detention facility, whereupon Frio County created the STDCLDC to issue public bonds and raise public funds; in August of 2004, STDCLDC and CSC entered into an operating agreement whereby CSC would manage, supervise, and operate the detention complex for STDCLDC and Frio County, thereby providing temporary housing, safekeeping, transportation and other services to persons in the custody of the United States; and CSC further agreed to assume responsibility and liability for claims arising from the performance of its obligations and duties such that when GEO subsequently acquired CSC in November of 2005, it also acquired the rights, privileges, duties and obligations under the agreement between CSC and STDCLDC with respect to the operation of the STDC.[1] **Docket no. 26**, Plaintiffs' Second Amended Complaint.

Plaintiffs allege that defendants, GEO and STDCLDC violated their civil rights pursuant to the Americans with Disabilities Act (ADA), and the Rehabilitation Act of 1973 (RA), as well as retaliated against them for asserting their rights under federal law. Additionally, plaintiffs complain that defendants engaged in wrongful conduct constituting negligence and further, that defendants breached duties owed to plaintiffs arising from contractual agreements entered into by the various defendants,

---

[1]  Whenever applicable, all future references to the company responsible for providing housing to persons detained at STDC pending their removal/proceedings shall be to "GEO" rather than its predecessor "CSC."

3

including GEO.[2]  GEO filed its first motion to dismiss which was dismissed as moot based upon the filing of plaintiffs' second amended complaint.  (Docket nos. 13, 24, 26).  GEO the filed its second Motion to Dismiss, maintaining that plaintiffs' second amended complaint fails to state a claim upon which relief can be granted.[3]  (Docket no. 39).  Additionally, defendant STDCLDC filed a Motion for Summary Judgment, asserting that plaintiffs' claims should be dismissed as a matter of law.  (Docket no. 56).

### STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the filing of a motion to dismiss a case for failure to state a claim upon which relief can be granted.  Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  To survive a Rule 12(b)(6) motion to dismiss, a complaint need not contain detailed factual allegations, but must include more than labels and conclusions or a formalistic recitation of the elements of a cause of action.  ***Bell Atlantic Corp. v. Twombly***, 550 U.S. 544, 555 (2007).  The factual allegations must be sufficient to state a claim to relief that is

---

[2]  Plaintiffs' Second Amended Complaint alleged negligence and gross negligence; however, on November 1, 2008, plaintiffs dismissed these claims as to defendants, Frio County, Texas and the STDCLDC.  (Docket no. 48).

[3]  Although GEO states in its motion that plaintiffs have also asserted a breach of contract claim, it does not address this claim in its motion.

4

plausible on its face and to raise a right to relief above the speculative level. *Id.*, at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The mere possibility of misconduct is not sufficient. *Ashcroft v. Iqbal*, No. 07-1015, 2009 WL 1361536, at *13 (U.S. Supreme Court, May 18, 2009).

The Court must accept plaintiff's allegations as true, and all reasonable inferences are to be drawn in favor of plaintiff's claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005). However, the Court need not accept plaintiff's *legal* conclusions as true. *Ashcroft v. Iqbal*, 2009 WL 1361536, at *13. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *Id.*

Federal Rule of Civil Procedure 56(b) provides that a defending party may move, with or without supporting affidavits, for a summary judgment on all or part of the claim. Summary judgment shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying

5

those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 323 (1986). The party opposing a motion must present affirmative evidence to defeat a properly supported motion for summary judgment. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 257 (1986). A defendant who moves for summary judgment on the plaintiff's claim may satisfy its burden in two ways: (1) submit evidence that negates the existence of a material element of the plaintiff's claim; or (2) show there is no evidence to support an essential element of the plaintiff's claim. ***Celotex Corp.***, 477 U.S. at 325. An adverse party may not rest upon the mere allegations or denials of his pleadings, but his response must, by affidavits or as otherwise provided in Fed. R. Civ. P. 56, set forth specific facts showing there is a genuine issue for trial; if he does not so respond, summary judgment, if appropriate, shall be entered against him. **FED.R.CIV.P. 56(e)(2).**

<u>**DISCUSSION**</u>

**I. GEO'S MOTION TO DISMISS**

**A.  Title II Of The ADA**

Plaintiffs alleged that GEO denied them services because of their disability in violation of the ADA and the RA.  The ADA was enacted specifically to eliminate discrimination against individuals with disabilities and provides that: "[N]o qualified individual with a disability shall, by reason of such disability,

6

be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." **42 U.S.C. § 12132;** *see also Delano-Pyle v. Victoria County, Texas*, 302 F.3d 567, 574 (5th Cir. 2002). To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate that: (1) he is a qualified individual with a disability; (2) he was excluded from participation in or denied benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) the exclusion, denial of benefits, or discrimination was by reason of plaintiff's disability. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004)(citing *Lightbourn v. County of El Paso, Texas*, 118 F.3d 421, 428 (5th Cir. 1997)). The ADA defines a "public entity" as any State or local government, any department, agency, special purpose district, or other instrumentality of a State or States or local government, or the National Railroad Passenger Corporation, and any commuter authority. *See* **42 U.S.C. § 12131(1)(A)-(C)**. Additionally, a plaintiff asserting a private cause of action for violations of the ADA or the RA may only recover compensatory damages upon a showing of intentional discrimination. *Carter v. Orleans Parish Pub. Sch.*, 725 F.2d 261, 264 (5th Cir. 1984).

In the present case, GEO, "a Florida-based company doing

7

business in Texas, is clearly not a State or local government;
however, plaintiffs contend that GEO is an "instrumentality of a
... local government," and therefore, meets the statutory
definition of a "public entity." *See* **42 U.S.C. § 12131(1)(A)-(C)**.
In support of this position, plaintiffs argue that GEO performs a
job that is historically and uniquely a governmental function, i.e.
the forcible detention of people for a governmental purpose, that
GEO "delivers its activities, programs and services at a facility
that is wholly owned by a public entity," (docket no. 42) and that
the STDC is operated by GEO for the benefit of the United States,
Frio County, and the STDCLDC in accordance with the "Operating
Agreement." Plaintiffs argue, therefore, that "the guarantees to
equality and non-discrimination of Title II extend to all services,
programs or activities offered at the facility." (Docket no. 63).

     Plaintiffs arguments fail for several reasons. First, GEO
detains persons at the U.S. government's request rather than the
State or local government's request. *See* **42 U.S.C. §
12131(1)(A)-(C)** (defining a "public entity," in part, as an
"instrumentality of a *State* or *States* or *local*
government")(emphasis added). Second, although plaintiffs suggest
that GEO should be held liable because it "delivers its activities,
programs and services at a facility that is wholly owned by a
public entity," Title II requires that the plaintiff have been
"excluded from participation in or be denied the benefits of the

8

services, programs, or activities *of a public entity*," rather than *at a public entity*. **42 U.S.C. § 12132;** *see also Delano-Pyle*, 302 F.3d at 574. Here, plaintiffs do not allege that the building in which they were housed was not ADA compliant but instead, that while housed at this facility, plaintiffs were denied medical care and treatment based solely on their disabilities in violation of the ADA. Even assuming that GEO could be considered an instrumentality of Frio County, neither Frio County nor GEO was responsible for providing the services in question. Instead, the United States Public Health Service was responsible at all times for providing medical and healthcare services for ICE detainees in the Complex. **Docket no. 55,** Operating Agreement Between STDCLDC, as Owner, and CSC, as Operator, exh. A, p. 4, para. 2. GEO, a private actor, identified by plaintiffs as a "Florida-based company doing business in Texas," had no "right to control the delivery of medical or healthcare services for ICE detainees." **Id.**

Nevertheless, plaintiffs maintain that in its Title II Technical Assistance Manual, the Department of Justice "does not completely reject the possibility that a private actor could be subject to liability under Title II of the ADA as an 'instrumentality' of a local government." Plaintiffs cite to language in the Title II Technical Assistance Manual that addresses the difficulty in determining whether a particular entity that is providing a public service is, in fact, a public entity. However,

9

the Court is not swayed by plaintiffs' reliance on the TA manual, particularly in light of the number of courts that have addressed this specific issue and have held that a private company, such as GEO, that contracts with a public entity cannot be subject to liability under Title II of the ADA. *See Gonzalez-Jarquin v. Corr. Corp. of Am.*, 2008 WL 3285764, *3 (S.D. Ga. Aug. 8, 2008)(holding that even though the private prison contractor CCA had contracted with the federal Bureau of Prisons to operate a federal correctional facility, the CCA was not a "public entity" for purposes of Title II)(citing *Maringo v. Warden, Corr. Corp. of Am.*, 2008 WL 2477582, *1 (5th Cir. June 19, 2008)(holding that Title II was not applicable to private prison operator Corrections Corporation of America)); *see also Edison v. Douberley*, 2008 WL 4194813, *6 (M.D.Fla. Sept. 9, 2008)(holding that GEO, due to its status as a private entity was not subject to Title II of the ADA); *Wynott v. Corr. Med. Servs., Inc.*, 2008 WL 2061385, *2 (D.Me. May 13, 2008)(incarcerated plaintiff's Title II claims dismissed where plaintiff sued private contractor who provided medical services to inmates); *Pitts v. Hayman*, 2008 WL 1776568, *10 n. 5 (D.N.J. April 16, 2008)(private company that contracts with a governmental department or agency does not constitute a "public entity"). In view of these decisions, and the absence of case law to the contrary, this Court likewise concludes that GEO is not a public entity subject to Title II claims under the ADA. Therefore, GEO's

10

motion to dismiss as to plaintiffs' ADA claims should be **GRANTED**.

**B.    The Rehabilitation Act**

The RA, enacted prior to the ADA, was designed "to ensure that handicapped individuals are not denied jobs or other benefits because of prejudiced attitudes or ignorance of others." **29 U.S.C. § 794 (1995)**. This Act specifically provides that:

> No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency.

*Id.* To establish a prima facie case of discrimination under §504 of the Rehabilitation Act, a plaintiff must prove: (1) the existence of a program or activity within the state which receives federal financial assistance; (2) the plaintiff is an intended beneficiary of the federal assistance; and (3) the plaintiff is a qualified handicapped person, who solely by the reason of her handicap has been excluded from participation in, been denied benefits from, or otherwise has been subject to discrimination under such program or activity. *Melton*, 391 F.3d at 676 n. 8 (citing *Brown v. Sibley*, 650 F.2d 760, 769 (5th Cir. 1981)). Unlike the ADA, plaintiffs seeking relief pursuant to the RA must establish that the "sole" cause of the discrimination was their disability. *Id.*

11

In this case, GEO maintains that because plaintiffs have also alleged a claim for negligence and gross negligence, they cannot establish the third requirement, i.e. that they were denied benefits "solely by reason" of their disability. ***Montgomery v. Potter***, No. 2:04CV162-D-A, 2006 WL 559240 (N.D. Miss. Mar. 6, 2006)(granting summary judgment as to RA claim where plaintiff also alleged racial discrimination). However, plaintiffs need not plead a prima facie case; but instead, need only allege "a short and plain statement of the claim showing that the pleader is entitled to relief." **Fed.R.Civ.P. 8**. Moreover, the rules permit a party to "set out 2 or more statements of a claim" in the alternative and provide that "the pleading is sufficient if any one of them is sufficient," regardless of consistency. **Fed.R.Civ.P. 8(d)(2),(3)**. Plaintiffs must, however, "provide grounds demonstrating an entitlement to relief that are more than 'labels and conclusions, and a formulaic recitation of the elements of a cause of action.'" ***Dark v. Potter***, 293 Fed. Appx. 254, 258 (5th Cir. Tex. 2008)(quoting ***Twombly***, 550 U.S. at 544).

In their second amended complaint, plaintiffs allege that defendants failed to provide Rodriguez with her prescribed medication and/or bring notice of such lack of medication to the appropriate medical provider because of her disability. They also allege that defendants failed to provide adequate and regular psychiatric treatment to plaintiff and/or failed to bring notice of

such lack of treatment to the attention of the appropriate medical provider, resulting in the deterioration of her physical and mental condition and requiring that she be placed in segregation and isolation. Similarly, plaintiffs allege that defendants failed to provide necessary treatment and accommodations to Cisneros de Jesus and/or failed to bring such medical needs to the attention of the appropriate medical providers because of his disability. They state that defendants failed to provide him with prescribed medication and/or failed to bring such medical needs to the attention of the appropriate medical providers. Plaintiffs contend that defendants failed to provide adequate and regular psychiatric treatment to Cisneros de Jesus and/or failed to bring notice of such lack of treatment to the appropriate medical provider. Finally, they assert that, instead of reasonably accommodating his disability and providing him access to medication and treatment on an equal footing with nondisabled persons, defendants placed Cisneros de Jesus in segregation for substantial periods of time.

Here, viewing the factual allegations in the light most favorable to the plaintiffs, the Court finds that plaintiffs have alleged sufficient facts pursuant to the RA to state a claim to relief that is plausible on its face. Plaintiffs have alleged facts which permits an inference of more than the mere possibility of misconduct under the RA. Accordingly, GEO's motion to dismiss plaintiffs' claims pursuant to the RA should be **DENIED.**

13

**C. Retaliation**

GEO next asserts that plaintiffs have failed to set forth specific factual allegations regarding their RA retaliation claim. GEO did not address plaintiffs' retaliation claim under the ADA, 42 U.S.C. § 12203(a).  That provision states that "[n]o *person* shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  The Court does not believe that GEO's lack of status as a public entity precludes its potential liability under § 12203.  Therefore, the retaliation claims under both the RA and the ADA shall be addressed.

To establish a claim for retaliation under either the RA or the ADA, plaintiffs must show that: 1) plaintiffs engaged in a protected act; 2) adverse action was taken against them; and 3) a causal connection exists between the protected act and the adverse action.  ***Ariel B. v. Fort Bend Indep. Sch. Dist.***, 428 F.Supp.2d 640, 665 (S.D. Tex. 2006).  Here, plaintiffs alleged that GEO retaliated against them by misdiagnosing their medical condition, denying them medical treatment, denying them reasonable accommodations, depriving Rodriguez of her crutches and placing plaintiffs in segregation.  Additionally, plaintiffs maintain that they were retaliated against because they, and others on their

14

behalf, complained that they were being mistreated and/or made repeated requests for reasonable accommodations but were refused. Viewing the factual allegations in the light most favorable to the plaintiffs, the Court finds these allegations could reasonably be interpreted as allegations that GEO retaliated against plaintiffs because of repeated requests for special accommodations. *Tabatchnik v. Continental Airlines*, 262 Fed. Appx. 674 (5th Cir. 2008)(making a request for a reasonable accommodation may constitute engaging in a protected activity). Therefore, the Court finds that plaintiffs have alleged sufficient facts to state a claim for relief that is plausible on its face.    Accordingly, GEO's motion to dismiss plaintiffs' retaliation claims should be **DENIED**.

### D. Negligence and Gross Negligence

Plaintiffs have also alleged that GEO acted with negligence and gross negligence in providing for plaintiffs' needs while they were housed at the STDC and in GEO's custody. A state law claim of negligence requires plaintiffs to establish the following three elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately caused by the breach. *See D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). A plaintiff alleging gross negligence must establish that the act or omission, viewed objectively from the actor's standpoint, involved an extreme degree of risk, considering the

15

probability and magnitude of the potential harm to others, and that
the actor had actual, subjective awareness of the risk involved,
but nevertheless proceeded in conscious indifference to the rights,
safety, or welfare of others. *Mobil Oil Corp. v. Ellender*, 968
S.W.2d 917, 921 (Tex. 1998).

In this case, GEO was not responsible for plaintiffs'
medical care but was otherwise responsible for the day-to-day care
of the detainees housed at STDC. Thus, although plaintiffs fail to
state a claim for negligence with respect to GEO's misdiagnosing of
plaintiffs and otherwise providing plaintiffs specific medical care
and treatment, GEO could be held liable if it was negligent or
grossly negligent in failing to bring plaintiffs' lack of
medication and/or need for medical treatment to the attention of
the appropriate entity. Accordingly, GEO's motion to dismiss
plaintiffs' negligence claims should be **DENIED**.

## II. STDCLDC'S MOTION FOR SUMMARY JUDGMENT

### A. Plaintiffs' Third-Party Beneficiary Claims

Plaintiffs sued STDCLDC for breach of contract,
specifically alleging that: "[p]laintiffs are third-party
beneficiaries of agreements between GEO, the GEO Group, Inc.,
STDLDC and the United States of America"; "[t]hrough such
agreements, [d]efendants intended and did secure a benefit for
[p]laintiffs, namely reasonable care for [p]laintiffs while housed
at the STDC and the requirement that [d]efendant GEO comply with

16

the ADA and ensure its application to [p]laintiffs"; "[t]he agreement among [d]efendants was for the benefit of [p]laintiffs and such benefit was contemplated by [d]efendants"; and "[i]n failing to fulfill its obligations under its agreement to provide reasonable care to [p]laintiffs, [d]efendants breached their contractual agreements and harmed [p]laintiffs." **Docket no. 26,** Plaintiffs' Second Amended Complaint, pg. 12.

Defendant, STDCLDC, is a local government corporation formed under  Subchapter D of the Texas Transportation Code. (Docket no. 56, exh. A, Articles of Incorporation of STDCLDC). Pursuant to the Transportation Code, a local government corporation is defined as "a governmental unit as that term is used in Chapter 101, Civil Practice and Remedies Code." TEX. TRANSPORTATION CODE ANN. § 431.108 (Vernon 2007).  A governmental unit is protected by the doctrine of sovereign immunity which, in Texas, encompasses both immunity from suit and immunity from liability. **TEX.CIV.PRAC.& REM.CODE ANN. § 101.001(3)(B)(Vernon 2005);** *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006).  Immunity from liability does not affect a court's subject-matter jurisdiction but rather, serves to protect a governmental entity from judgments even if the legislature expressly consents to suit. *Id.* (citing *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex.1999)).  Immunity from suit, on the other hand, deprives a trial court of subject-matter jurisdiction even if liability is undisputed. *Id.*  Because

17

legislative control over sovereign immunity serves the vital function of permitting the legislature to address changing conditions and amend existing contractual agreements, a waiver of immunity in the contract claims context must be clear and unambiguous to ensure that this legislative control is protected. *Tooke,* 197 S.W.3d at 332-33. Plaintiffs suing a governmental unit bear the burden of affirmatively demonstrating a clear and unambiguous waiver of immunity so as to invoke the trial court's jurisdiction. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003).

Under § 271.152, a local governmental entity authorized to enter into a contract, and that enters into a contract subject to this subchapter, waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract. TEX. LOC. GOV'T CODE ANN. § 271.152 (Vernon 2005). The issue of whether a third-party beneficiary can invoke the statutory waiver provided for in § 271.152 has not been specifically addressed in Texas. However, "the intention of the contracting parties is controlling in determining whether a third party can enforce a contract" and therefore, "[t]he intention to confer a direct benefit on a third party must be clearly and fully spelled out in the four corners of the contract." *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999). Third-party-beneficiary claims are generally disfavored and it is presumed that the parties contracted

18

for themselves unless the parties clearly intended a third-party to benefit from the contract. *Id.* Consequently, to establish an entitlement to a third-party claim, the third-party must show that: "(1) the obligation of the bargain-giver is fully spelled out, (2) it is unmistakable that a benefit to the third party was contemplated by the primary contracting parties, and (3) the primary parties contemplated that the third party would be vested with the right to sue for enforcement of the contract." *Whitten v. Vehicle Removal Corp.*, 56 S.W.3d 293, 312 (Tex. App.--Dallas 2001, pet. denied).

In the present case, the Operating Agreement between STDCLDC, as Owner, and CSC, as Operator specifically precludes the contemplation of a third-party beneficiary, by stating: "[t]he provisions of this Agreement are otherwise for the sole benefit of the parties hereto and shall not be construed as conferring any rights to any other person other than ICE and the Trustee as specified herein." (Docket no. 56, exh. B, Operating Agreement, para. 25, dated August 1, 2004). Accordingly, plaintiffs are not third-party beneficiaries and therefore, their claims based upon the contract between STDCLDC and GEO should be dismissed as a matter of law. According, STDCLDC's motion for summary judgment as to plaintiffs' breach of contract claims should be **GRANTED.**

**B. Title II Of The ADA and the Rehabilitation Act**

Plaintiffs have also alleged claims against STDCLDC

19

pursuant to the ADA and RA. However, in addition to the elements previously set out, a plaintiff seeking to recover under the ADA and RA must show "that the [defendant] knew not only of the [individual's] disability, but also of the physical or mental limitations resulting therefrom." *See McCoy v. Texas Dept. of Crim. Justice*, 2006 WL 2331055, *7 (S.D.Tex. Aug. 9, 2006)(citing *Seaman v. CPSH, Inc.*, 179 F.3d 297, 300 (5th Cir.1999) and *Gammage v. West Jasper Sch. Bd .*, 179 F.3d 952, 954 (5th Cir.1999)).

In the present case, the parties do not appear to dispute that plaintiffs are qualified individuals with disabilities. Further, although STDCLDC does not address whether it falls within the statutory definition of a "public entity, it claims it is a local government entitled to sovereign immunity and subject to the waiver of governmental immunity set out in § 271.152 of the Tex. Loc. Gov't Code. Assuming this is sufficient to establish that the STDCLDC is a "public entity" for purposes of the ADA, plaintiffs must show that they were either excluded from participation in or denied the benefits of a public entity's services, programs, or activities or were otherwise discriminated against by the public entity. *Melton*, 391 F.3d at 671-72. STDCLDC maintains that it was not responsible for plaintiffs' medical care or treatment; therefore, STDCLDC could not have excluded plaintiffs from participation in or denied plaintiffs the benefits of medical services, programs, or activities or have otherwise discriminated

20

against plaintiffs. In support thereof, STDCLDC cites to the following language set out in the Operating Agreement:

> . . . **the United States Public Health Service shall be responsible for providing medical and healthcare services** for ICE [Immigration and Customs Enforcement] detainees in the Complex and that **the Operator** [CSC, the predecessor to GEO Group, Inc., who contracted with Frio County to construct the detention facility] shall not have the right to control the delivery of medical or healthcare services for ICE detainees at the Complex or to ensure compliance by the Public Health Service with NCCHC Standards for Health Services in Jails, and that the Operator shall not be deemed to be in breach or default of this Agreement as a result of any failure on the part of the Public Health Service to comply with those standards at the Complex.

**Docket no. 55**, Operating Agreement Between STDCLDC, as Owner, and CSC, as Operator, exh. A, p. 4, para. 2 (emphasis added). Thus, plaintiffs' argument that STDCLDC may be held liable because either STDCLDC or GEO, a private corporation, was "operating as a public entity or an instrumentality of the ADA" is without merit because the STDCLDC was not involved in the delivery of medical or healthcare services for ICE detainees and therefore, could not have excluded plaintiffs from participation in or otherwise denied plaintiffs' benefits for medical services, programs, or activities. Pursuant to the Operating Agreement, the "Operator" (which was CSC originally and which eventually became GEO) of the STDC was given the exclusive right to operate the STDC. Thus, unlike GEO, the STDCLDC was not operating the facility; it was simply the owner.

Finally, plaintiffs argue that although the STDC is run

pursuant to the Operating Agreement, it is also subject to the ICE Contract, which has not been produced.  Plaintiffs maintain that "the terms and implementation of such agreements, which enact policies and responsibilities applicable to the [p]laintiffs, are still being investigated" and plaintiffs require the opportunity to discover the subject matter of such contracts and inquire whether their application created mandatory procedures applicable to this case.[4]

A party opposing a motion for summary judgment based on the need for further discovery must show by affidavit that it cannot present facts essential to justify its opposition, whereupon the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order. **FED.R.CIV.P. 56(f)**.  A "continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course; however, the party seeking additional discovery must first satisfy the following four requirements: (1) he must request

---

[4]  Although plaintiffs maintain they should be given a full and fair opportunity to discover the subject matter of the ICE Contract which they state "was applicable to, and incorporated into, the Operating Agreement for the detention center," plaintiffs argue that the Operating Agreement, attached to STDCLDC's motion as summary judgment evidence, should be excluded because the document was not a certified copy, the affidavit of Jesus Salinas does not state how Salinas is competent to make the affidavit, and STDCLDC failed to present a statement of undisputed facts.  However, plaintiffs do not appear to dispute that the Operating Agreement is valid and in fact, refer to this exact agreement in their Second Amended Complaint, going so far as to provide the month and year the Operating Agreement was entered into, along with the duties and obligations the parties agreed to assume pursuant to that agreement.  Accordingly, the Court finds the plaintiffs' objections to the evidence to be without merit.

extended discovery before the court rules on summary judgment; (2) he must put the court on notice that further discovery relating to the summary judgment motion is being sought; (3) he must show how the requested discovery will create a genuine issue of material fact; and (4) he must have acted in a diligent fashion so as not to have put himself in the current position through inaction. ***Int'l Shortstop, Inc. v. Rally's, Inc.***, 939 F.2d 1257, 1267 (5th Cir. 1991). A nonmoving party "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts." ***Id.*** at 1266 (quoting ***SEC v. Spence & Green Chem. Co.***, 612 F.2d 896, 900 (5th Cir. 1980). If it appears likely that the requested discovery will not result in evidence germane to the summary judgment motion, the district court may deny the requested extension. ***Fisher v. Metropolitan Life Ins. Co.***, 895 F.2d 1073, 1078 (5th Cir.1990); ***Netto v. Amtrak***, 863 F.2d 1210, 1216 (5th Cir.1989).

Here, plaintiffs seek to exclude the Operating Agreement but nevertheless assert that the ICE Contract "was applicable to, and incorporated into, the operating agreement for the detention center between Defendant GEO Group, Inc., and Defendants [STDCLDC] and Defendant Frio, County, Texas." However, the Operating Agreement specifically provides that "in accordance with the ICE Contract, the United States Public Health Services shall be responsible for providing medical and healthcare services for ICE

detainees in the Complex," and further, that GEO "shall not have the right to control the delivery of medical or healthcare services for ICE detainees at the Complex or to ensure compliance by the Public Health Service with NCCHC Standards for Health Services in Jails."

Thus, to the extent plaintiffs complain that they were denied access to medical services and treatment while detained at the STDC, the United States Public Health Services, and not STDCLDC, was responsible pursuant to both the ICE Contract and the Operating Agreement. Therefore, further discovery will not correct the legal and factual insufficiencies with respect to plaintiffs' ADA and RA claims. *Fisher*, 895 F.2d at 1078; *Netto*, 863 F.2d at 1216. Accordingly, STDCLDC's motion for summary judgment should be **GRANTED** and plaintiffs' claims pursuant to the ADA and RA should be **DISMISSED** as a matter of law.

## C. Retaliation

Lastly, plaintiffs contend that even if STDCLDC was not involved in the day-to-day operation of the STDC, it is still liable for retaliating against plaintiffs for asserting their rights under Title II of the ADA. Specifically, plaintiffs allege that after Rodriguez and/or her attorney complained that Rodriguez was being discriminated against because of her disability, defendants "GEO and the United States of America retaliated against Plaintiff by purposefully misdiagnosing her condition, denying her

24

adequate treatment and reasonable accommodations, removing her crutches, and stripping her naked and placing her in an isolation room." Plaintiffs alleged that "[a]lthough aware of such retaliatory actions by [d]efendant GEO, [d]efendants United States, Frio County and STDCLDC failed to take any actions to stop the retaliation." Plaintiffs further alleged that "[d]uring the course of [p]laintiff's confinement at the South Texas Detention Complex, [d]efendant GEO's agents ridiculed [p]laintiff on a regular basis because of her disability" and "GEO's employees taunted [p]laintiff by telling her that she [was] not truly sick, that she [was] faking her illness, that she ha[d] no rights in the United States, and that she [would] soon be deported to Mexico."

With respect to plaintiff Cisneros de Jesus, plaintiffs alleged that "despite numerous requests for medical treatment and reasonable accommodations by plaintiff, his common-law wife, and his immigration lawyer, [d]efendants refused to remedy the situation" and instead, "retaliated against [Cisneros de Jesus] by misdiagnosing his condition, denying him adequate treatment, access to adequate treatment, and reasonable accommodations, and prolonging his segregation and isolation." Plaintiffs further alleged that "[d]uring the course of [p]laintiffs confinement at the [STDC], [d]efendant GEO's agents ridiculed [p]laintiff on a regular basis because of his disability."

Here, plaintiffs have alleged that they engaged in a

25

protected act, i.e. complaining that they were being discriminated against because of their disabilities and making requests for reasonable accommodations. *Tabatchnik*, 262 Fed. Appx. at 674. However, plaintiffs must next show that STDCLDC took adverse action against them. *Ariel B.*, 428 F.Supp.2d at 665. Although plaintiffs specifically allege that GEO and the United States retaliated against them, plaintiffs allege only that STDCLDC was aware of the retaliatory actions by GEO and the United States but "failed to take any actions to stop the retaliation." Plaintiffs provide no facts indicating that STDCLDC took adverse action against them and identify no one from STDCLDC who retaliated against them for engaging in protected conduct.[5] This claim is conclusory. Moreover, STDCLDC disputes having knowledge of plaintiffs' complaints regarding their treatment or conditions of confinement and has presented summary judgment evidence in support thereof. (Docket no. 56, exh. D, Affidavit of Jesus Salinas.). This demonstrates plaintiffs' failure to establish a causal relationship between the protected activity and the allegedly adverse act as a matter of law. *See Ariel B.*, 428 F. Supp.2d at 665. Accordingly, STDCLDC's motion for summary judgment as to plaintiffs' retaliation claims should be **GRANTED**.

---

[5]  STDCLDC is governed by a Board of Directors consisting of four (4) individuals. (Docket no. 56, exh. A, Articles of Incorporation). It does not have employees and conducts its business by voting on items brought before the Board of Directors for consideration. Plaintiffs have not alleged that any members of this board retaliated against plaintiffs or otherwise knew of their complaints.

## RECOMMENDATION

It is the recommendation of the Magistrate Judge that GEO Group's second motion to dismiss should be **GRANTED** as to plaintiffs' ADA claims and **DENIED** as to plaintiffs' RA, retaliation and negligence claims.  Further, STDCLDC's motion for summary judgment should be **GRANTED**.

## Instructions for Service and Notice of Right to Appeal/Object

_____The United States District Clerk shall serve a copy of this United States Magistrate Judge's Memorandum and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Pursuant to Title 28 U.S.C. Section 636(b)(1) and Federal Rule of Civil Procedure 72(b), any party who desires to object to this report must serve and file written objections to the Memorandum and Recommendation within 10 days after being served with a copy unless this time period is modified by the district court.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  ***Such party shall file the objections with the clerk of the court, and serve the***

*objections on all other parties and the magistrate judge.*    A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation contained in this Memorandum and Recommendation within 10 days after being served with a copy shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428 (5th Cir. 1996).

**SIGNED** May 19, 2009.

_____
JOHN W. PRIMOMO
UNITED STATES MAGISTRATE JUDGE

28